1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON

8   REBECCA CARDENAS, O/B/O          )
9   DAWN MENDOZA (DECEASED),         )    No. CV-09-016-CI
                                     )
10           Plaintiff,              )    ORDER GRANTING PLAINTIFF'S
                                     )    MOTION FOR SUMMARY JUDGMENT
11  v.                               )    AND REMANDING TO THE
                                     )    COMMISSIONER FOR ADDITIONAL
12  MICHAEL J. ASTRUE, Commissioner  )    PROCEEDINGS
    of Social Security,              )
13                                   )
             Defendant.              )
14                                   )
                                     )
15  _____      )

16       BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.

17  Rec. 19, 22.)  Attorney D. James Tree represents Plaintiff; Special

18  Assistant United States Attorney Leisa A. Wolf represents Defendant.

19  The parties have consented to proceed before a magistrate judge.

20  (Ct. Rec. 8.)  After reviewing the administrative record and briefs

21  filed by the parties, the court **GRANTS** Plaintiff's Motion for

22  Summary Judgment, and **REMANDS** the case to the Commissioner for

23  additional proceedings pursuant to 42 U.S.C. § 405(g).

24                           **JURISDICTION**

25       On March 22, 2004, Dawn Mendoza(Plaintiff) protectively filed

26  for disability insurance benefits (DIB).  (Tr. 106.)  Plaintiff

27  alleged disability due to missing fingers on her left hand, three

28  missing toes on her right foot, pain in her left arm and shoulder,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS - 1

"depression/bipolar, severe highs and lows, pain and anxiety," with an alleged onset date of January 7, 2004.  (Tr. 90, 106, 277.) Benefits were denied initially and on reconsideration.  Plaintiff then requested a hearing before an administrative law judge (ALJ), which was held before ALJ Peter Baum on October 17, 2006. (Tr. 376-98.)  Plaintiff, who was represented by counsel, testified.  The ALJ denied benefits on February 14, 2007.  (Tr. 13-19.)  The Appeals Council denied review.  (Tr. 4-6.)  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the hearing, Plaintiff was 42 years old and had a ninth grade education. (Tr. 381.)  She was divorced and living lived with two of her children, ages 14 and 5.  (Tr. 389.)  Plaintiff had work experience as a caregiver, bingo worker and customer service representative. (Tr. 71.)  She had back surgery in 2004 for a herniated disc.  (Tr. 154.)  She later suffered a back injury during her work as a care giver in 2005, and was found unable to work until February 2006, when she was released to sedentary level work by her treating physician.  (Tr. 301, 361.)  She was released to light duty work in or around May 2006.  (Tr. 294-95.)  She testified she was unable to hold a job due to back and pain issues.  (Tr. 169, 393.)  She testified she had burning and numbness down her legs as well as bowel and bladder incontinence.  (Tr. 393.) She testified she also had problems with anger control and getting along with people at the workplace.  (Tr. 394.)  Plaintiff had a history of substance abuse.

(Tr. 156-57, 362.)

**ADMINISTRATIVE DECISION**

At step one, ALJ Baum found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 15.) At step two, he found Plaintiff had the severe impairments of "alcohol abuse, depressive and cognitive and personality disorders, status post surgical amputation of 3 fingers of the left hand and 3 toes of the right foot secondary to chicken pox; lumbar disc desiccation; status post laminectomy and diskectomy." (Tr. 15-16.) At step three, he determined Plaintiff's impairments, including substance abuse disorder met the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings), Section 12.09(B)(*Substance Addiction Disorders: Depressive Syndrome*), and she was therefore "disabled" with the effects of substance abuse. (*Id.*) He then found that substance abuse was a contributing factor to Plaintiff's disability; however, if she stopped the substance abuse, she would "continue to have a severe impairment or combination of impairments" but they would not meet or equal the Listings. (*Id.*) Specifically, he concluded when Plaintiff was not abusing alcohol, she had "moderate restrictions in daily living activities, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation." (*Id.*)

At step four, the ALJ determined Plaintiff's statements regarding the intensity of her symptoms were not entirely credible and found she had the residual functional capacity (RFC) to lift and carry 20 pounds, sit, stand and walk six hours each in an eight-hour

1  workday with the following non-exertional restrictions: occasional

2  bending, climbing, squatting and kneeling; and "moderate social and

3  concentration limitations that do not preclude a full range of light

4  work." (Tr. 17.)   He found that even without substance abuse,

5  Plaintiff could not perform her past relevant work. (Tr. 18.)   At

6  step five, relying on the Medical-Vocational Guidelines, 20 C.F.R.

7  Part 404, Subpart P, Appendix 2, (Grids), he concluded there were

8  other jobs in the national economy she could perform if she stopped

9  the substance abuse.  (Tr. 18.)   He determined Plaintiff was not

10  disabled as defined by the Social Security Act at any time through

11  the date of his decision.  (Tr. 19.)

12                        **STANDARD OF REVIEW**

13       In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

14  court set out the standard of review:

15       A district court's order upholding the Commissioner's
         denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
16       211 F.3d 1172, 1174 (9th Cir. 2000).  The decision of the
         Commissioner may be reversed only if it is not supported
17       by substantial evidence or if it is based on legal error.
         *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
18       Substantial evidence is defined as being more than a mere
         scintilla, but less than a preponderance.  *Id.* at 1098.
19       Put another way, substantial evidence is such relevant
         evidence as a reasonable mind might accept as adequate to
20       support a conclusion.  *Richardson v. Perales*, 402 U.S.
         389, 401 (1971).  If the evidence is susceptible to more
21       than one rational interpretation, the court may not
         substitute its judgment for that of the Commissioner.
22       *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169
         F.3d 595, 599 (9th Cir. 1999).

23

24       The ALJ is responsible for determining credibility,
         resolving conflicts in medical testimony, and resolving
         ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
25       Cir. 1995).  The ALJ's determinations of law are reviewed
         *de novo*, although deference is owed to a reasonable
26       construction of the applicable statutes.  *McNatt v. Apfel*,
         201 F.3d 1084, 1087 (9th Cir. 2000).

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS - 4

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in

weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he: (1) improperly rejected the opinions of her treating physician; (2) improperly rejected the opinions of her daughter and physical therapist; and (3) erroneously relied on the Grids at step five. (Ct. Rec. 20 at 13.) Defendant responds the ALJ's decision should be affirmed. (Ct. Rec. 23.)

**DISCUSSION**

**A.   Evaluation of Medical Evidence - Mental Impairments**

The Contract with America Advancement Act of 1996 (CAAA) amended the Social Security Act, providing that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. 423(d)(2)(C). Special statutes and regulations govern disability claims that involve substance abuse.

Under the regulations implemented by the Commissioner, the ALJ must follow a specific analysis that incorporates the five-step sequential evaluation process. 20 C.F.R. §§ 404.1535(a),

416.935(a).    The ALJ first must conduct the five-step inquiry without attempting to determine the impact of substance addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, the claimant is not entitled to benefits, and there is no need to proceed with further analysis. *Id.* If the ALJ finds the claimant disabled, and there is evidence of substance addiction, the ALJ should proceed under the sequential evaluation and §§ 404.1535 or 416.935 to determine if the claimant would still be disabled absent the substance addiction. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).    If found disabled with the effects of substance addiction, it is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

Here, in the first sequential evaluation, ALJ Baum found Plaintiff had severe "alcohol abuse, depressive and cognitive and personality disorders," and these mental impairments were "inextricably intertwined with her alcohol abuse." (Tr. 16.)    He concluded Plaintiff's impairments met the criteria of Listing section 12.09(B)(*Substance Addiction Disorders: Depressive Syndrome*) when she was using drugs and/or alcohol. (*Id.*)    Thus, because substance abuse was a contributing factor material to his determination, Plaintiff was found ineligible for disability benefits. (*Id.*)    In making this determination, the ALJ stated he gave significant weight to the opinions of examining psychologist Jay Toews, Ed.D., who evaluated Plaintiff in December 2006. (Tr. 16, 361-69.)

At step two of the second sequential evaluation, the ALJ found that if Plaintiff stopped the substance abuse, she would still have

a severe impairment or combination of impairments, although he did not identify specifically which severe mental impairments existed without the effects of substance abuse.  (Tr. 16.) Nonetheless, he concluded these unidentified mental impairments caused moderate social and concentration limitations in Plaintiff's ability to work. (Tr. 16-17.)  Plaintiff argues the ALJ erred when he failed to reject or include the limitations assessed by Dr. Toews "without substance abuse," in the final RFC determination.

As an examining psychologist, Dr. Toews' uncontradicted opinions may be rejected only with "clear and convincing" reasons. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).  If contradicted, the reasons must be "specific" and "legitimate." *Andrews*, 53 F.3d at 1043.  Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding the treating physician's opinion.  *Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  The ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected.  *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

The record shows that Dr. Toews diagnosed a depressive disorder NOS (severe), a cognitive disorder NOS, borderline intellectual functioning, probable, and a learning disorder NOS (by history). (Tr. 366.)  He observed Plaintiff was marginally compliant in her

testing and exhibited poor effort in testing. (Tr. 366.)
Recognizing that Plaintiff was actively abusing alcohol, Dr. Toews
distinguished between limitations with the effects of substance
abuse, and without the effects of substance abuse in his Medical
Source Statement prepared for the Social Security Administration,
(SSA) and noted that "alcohol abuse exacerbates personality
problems, psychosocial adjustment, depression." (Tr. 368.)

Dr. Toews opined that without substance abuse, Plaintiff
exhibited moderate limitations in her ability to understand,
remember and carry out short, simple instructions, and make judgment
on simple work-related instructions. Dr. Toews also assessed a
"marked" limitation in her ability to interact appropriately with
the public, and moderate limitations in her ability to interact
appropriately with supervisors, co-workers and respond appropriately
to work pressures and changes in the routine work setting. (Tr. 367-
38.)

Dr. Toews' opinions are not contradicted. His diagnoses are
consistent with those of Roland Dougherty, Ph.D., who evaluated
Plaintiff for the SSA in December 2004. (Tr. 154-64.) Dr.
Dougherty did not diagnose alcohol/drug addiction. (Tr. 159.) He
opined Plaintiff had poor social interaction and "difficulty
sustaining concentration and persisting at tasks." (Tr. 160.) The
record also includes a psychiatric review technique form, completed
by agency psychologist Dr. James Bailey. (Tr. 134-53.) Dr. Bailey
did not include a substance addiction disorder (12.09) among the
psychological disorders supported by the record. (Tr. 140.)
Consistent with Dr. Toews, Dr. Bailey noted a marked limitation in

Plaintiff's ability to interact with the public. (Tr. 138.) These two acceptable medical sources, therefore, agreed that Plaintiff had a marked non-exertional limitation without the effects of substance abuse, as well as several moderate limitations that would affect her ability to work.

The ALJ erred when he failed to give specific "clear and convincing" reasons supported by the record for rejecting the specific moderate and marked limitations assessed by Dr. Toews and Dr. Bailey. He further erred when he failed to explain the weight given these probative opinions at all steps of the sequential evaluation. 20 C.F.R. § 404.1520a(e)(2). These legal errors are cause for reversal. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). On remand, the ALJ will identify in his decision the specific severe mental impairments that would continue if Plaintiff stopped the substance abuse, discuss the medical evidence that supports his step two (without substance abuse) determination, and give legally sufficient reasons for disregarding acceptable medical source opinions during the entire sequential evaluation process.[1] *SSR* 96-8p.

**B.   Step Five - Use of the Grids**

If it is determined at step four that a claimant cannot perform

---

[1] Plaintiff also argues the ALJ erroneously evaluated evidence from Plaintiff's daughter and physical therapist. (Ct. Rec. 20 at 19-20.) On remand, the ALJ will re-evaluate lay witness evidence regarding how Plaintiff's impairments affect her ability to perform work related tasks, as instructed in the Commissioner's policy ruling, *SSR* 06-03p.

past work, the ALJ continues to step five.    20 C.F.R. §§
40.1520(a)(4)(iv),(v).    At step five, the burden shifts to the
Commissioner to consider the claimant's RFC, age, education and work
experience, and show the claimant can perform other work in the
national economy. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir.
1984).

The medical-vocational guidelines (Grids) were adopted by the
SSA to improve the efficiency and uniformity of Social Security
benefits proceedings at step five, when the Commissioner is obliged
to prove there are other suitable jobs available. *Desrosiers v.
Secretary of Health and Human Services,* 846 F.2d 573, 577 (9th Cir.
1988).    Pursuant to rulemaking authority granted by Congress, the
SSA developed a matrix of four factors (physical ability, age,
education and work experience) that could be used by the
Commissioner to determine whether work exists that a claimant can
perform.    This established a consistent procedure at step five for
identifying other jobs that did not rely on vocational expert
testimony.    "Where a claimant's qualifications correspond to the job
requirements identified by the rule, the guidelines direct a [step
five] conclusion as to whether work exists that the claimant could
perform." *See Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983)(use
of Grids upheld as valid).

The use of the Grids is appropriate only where "a claimant's
functional limitations fall into a standardized pattern accurately
and completely described by the Grids." *Tackett,* 180 F.3d at 1103
(*citing Desrosiers*, 846 F.2d at 577).    "Significant non-exertional
impairments make reliance on the Grids inappropriate." *Desrosiers*,

846 F.2d at 577.  Non-exertional limitations are those that do not depend on an individual's physical strength, such as mental, sensory, manipulative and environmental limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989).  Where non-exertional limitations exist, "the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment." *Id.,* 880 F.2d at 1156.  The Grids are then used as a "framework," because, alone, the Grids do not fully describe the claimant's abilities and limitations. *Tackett*, 180 F.3d at 1102. Further, a vocational expert is required where "a claimant's non-exertional limitations are in themselves enough to limit his range of work." *Polny v. Bowen*, 864 F.2d 661, 663-64 (9th Cir. 1988).

Here, the ALJ erred when he failed to consider the significant psychological limitations identified by Drs. Toews and Bailey, resulting from Plaintiff's diagnosed mental disorders without substance addiction.  The unrejected "marked" limitation (without substance abuse) in Plaintiff's ability to interact appropriately with the public assessed by Drs. Toews and Bailey do not support the ALJ's step-five finding that Plaintiff's non-exertional limitations would have "little or no effect on the occupational base of unskilled light work."[2]  (Tr. 19.)  Without evidence from a

_____

[2] The ALJ's step five reliance on the Grids is also inappropriate considering Plaintiff's postural, manipulative and environmental limitations resulting from her missing digits and diagnosed back impairments.  (Tr. 132-35.)  Several functional limitations were assessed by agency physician Howard Platter, M.D., whose opinion evidence was given "significant weight" by the ALJ,

vocational expert, this finding is not supported by substantial evidence. *See Polny*, 864 F.2d at 663-64. In addition, the evidence of a significant non-exertional limitation caused by a severe mental impairment makes the ALJ's application of the Grids inappropriate. (*Id.*) Thus, the Commissioner did not meet his burden at step five to show there are a significant number of jobs in the national economy Plaintiff is able to perform. Because vocational expert testimony is needed to resolve the step five issue, remand for additional proceedings is appropriate. *Harman*, 211 F.3d at 1178; *Smolen*, 80 F.3d at 1292. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 19)** is **GRANTED,** and the matter is remanded to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g) and the decision above, including testimony by a vocational expert if step five is reached;

---

but not fully discussed or incorporated in the RFC determination. (Tr. 18.)   Further, in his policy ruling, the Commissioner advises that manual dexterity narrows light range of work, and explains:

> As a general rule, limitations of fine manual dexterity have greater adjudicative significance - in terms of relative number of jobs in which the function is required - as the person's exertional RFC decreases. . . . The varying degrees of loss which can occur may require a decisionmaker to have the assistance of a [vocational specialist].

*SSR* 85-15. Without further evidence from a vocational expert, the ALJ's finding that Plaintiff's missing fingers would have little or no effect on her occupational base, (Tr. 19), is not supported by substantial evidence.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS - 13

1    2.    Defendant's Motion for Summary Judgment **(Ct. Rec. 22)** is

2  **DENIED.**

3    3.    An application for attorney fees may be made by separate

4  motion.

5    The District Court Executive is directed to file this Order and

6  provide a copy to counsel for Plaintiff and Defendant. Judgment

7  shall be entered for **Plaintiff** and the file shall be **CLOSED.**

8    DATED October 29, 2009.

9
                          S/ CYNTHIA IMBROGNO
10                      UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING TO THE COMMISSIONER FOR ADDITIONAL PROCEEDINGS - 14